USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/3/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
VINCENT ZANFARDINO,

                                  Plaintiff,

              -against-

THE CITY OF NEW YORK, *et al.*,

                                Defendants.
-------------------------------------------------------------------X

1:15-cv-8829-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, United States District Judge:

      While driving on the New England Thruway in Bronx County, Plaintiff Vincent Zanfardino suffered an epileptic seizure. As a result, his car collided with another vehicle, killing one of its passengers. Plaintiff was indicted by a Bronx County grand jury for second-degree manslaughter and other offenses as a result of the accident. Following trial, Plaintiff was acquitted of all charges against him. Plaintiff has now sued the City of New York, former Assistant District Attorney Allyson Meierhans, and former Detective William Wilson, asserting that the District Attorney's office suborned perjury before the grand jury and that Defendants conducted a one-sided investigation and prosecution. Defendants have filed a motion to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Because prosecutors are protected by the doctrine of absolute immunity under the circumstances alleged in the complaint and because Plaintiff fails to adequately plead the elements of his claims against the other Defendants, that motion is GRANTED.

### I. BACKGROUND

      Unless otherwise noted, the following facts are taken from the second amended complaint, and are accepted as true for the purposes of this motion. *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). On July 11, 2012 at approximately 8:00 p.m., Plaintiff was driving his

car on the New England Thruway in Bronx County when he had an epileptic seizure and his car collided with another vehicle driven by Brynn Rohlf. Second Amended Complaint, Dkt. No. 47 ("Compl."), ¶ 13. Tragically, the passenger in the rear seat of Ms. Rohlf's car was killed in the accident. *Id.* On July 11, 2012, New York City Police Detective William H. Wilson ("Detective Wilson") responded to the accident scene along with several other police officers. *Id.* ¶ 14. Detective Wilson took photographs of the scene, the vehicles involved in the accident, the "skid and yaw marks" left by the tires of the vehicles involved in the accident and the marks those vehicles left on highway barriers, and the lanes of the roadway and entry ramps. *Id.* Detective Wilson also constructed an accident diagram to determine the positions of the cars at the time of the accident. *Id.*

At approximately 9:00 p.m. on July 11, 2012, Detective Wilson went to Jacobi Hospital and spoke with Plaintiff and Ms. Rohlf, separately, about the accident. *Id.* ¶ 15. Among other things, Detective Wilson wanted to determine whether either of them was under the influence of drugs or alcohol. *Id.* Neither was determined to be under the influence. *Id.* Plaintiff informed Detective Wilson that he suffered from epilepsy and was under the care of a doctor, taking prescribed medication for his condition. He also told the officer that his neurologist, Dr. Ronald Kanner, had "given . . . Plaintiff permission to drive." *Id.*

On July 17, 2012, Detective Wilson obtained Plaintiff's consent to obtain Plaintiff's medical records from both Jacobi Hospital and Dr. Kanner in order to determine whether Plaintiff had an adequate amount of anti-seizure medication in his blood, and to determine if there were any controlled substances or alcohol in his blood that would interfere with his seizure medication. *Id.* ¶ 16.

On July 18, 2012, the vehicle driven by Ms. Rohlf on the night of the accident was brought to the Erie Auto pound and was searched by New York City Police Officer Irene Vazquez. *Id.* On the floor behind the front seat in the vehicle, Officer Vazquez found two hypodermic needles, both

containing liquid, and seventeen bags of heroin. *Id.* Officer Vazquez notified Sergeant Jose Tavares about her discovery. *Id.* The Accident Investigation Squad of the New York City Police Department ("NYPD") and Detective Wilson were also notified. *Id.*

On July 19, 2012, the hypodermic needles and envelopes of heroin that were found in Ms. Rohlf's vehicle were sent to the NYPD Lab for analysis by Sergeant Taveras. *Id.* The "items tested positive as heroin." *Id.* Subsequent to the lab analysis, however, Detective Wilson "did not re-interview" Ms. Rohlf "regarding the discovery of alleged contraband" in her vehicle. *Id.*

On July 24, 2012, at the direction of, and accompanied by, Assistant District Attorney Allyson Meierhans ("ADA Meierhans"), Detective Wilson applied for a search warrant to test Plaintiff's blood in order for the NYPD lab to determine whether anti-seizure medication was in his blood at the time of the accident. *Id.* Neither Detective Wilson nor ADA Meierhans applied for a search warrant for Ms. Rohlf's blood, despite the discovery of drugs and drug paraphernalia in her vehicle. *Id.*

On July 26, 2012, ADA Meierhans directed Detective Wilson to request that the NYPD lab test Plaintiff's blood for anti-seizure medication, alcohol, and any controlled substances that would interfere with any anti-seizure medication in Plaintiff's blood. *Id.* That test came back negative for alcohol or drugs. *Id.* Neither ADA Meierhans nor Detective Wilson requested that the lab test Ms. Rohlf's blood to determine if any "illegal contraband" was in her bloodstream on the night of the accident. *Id.*

On October 11, 2012, Detective Wilson, acting at the direction of ADA Meierhans, visited Plaintiff's residence and obtained from him additional medical releases for his medical records which were in the possession of Dr. Kanner. *Id.* As Detective Wilson was leaving Plaintiff's residence, he "turned, looking over his shoulder and said to the Plaintiff in sum and substance: 'you'd better get a lawyer.'" *Id.* Detective Wilson made this statement to the Plaintiff "solely to cause emotional upset

to Plaintiff," as Detective Wilson was aware at that time that Plaintiff "was about to be criminally prosecuted" by ADA Meierhans. *Id.*

On October 18, 2012, ADA Meierhans began presenting evidence to a grand jury in Bronx County which was investigating the accident involving Plaintiff. *Id.* ¶ 17. By that time, Plaintiff had been named as "the person against whom the investigation was pending" by ADA Meierhans. *Id.* Detective Wilson testified before the grand jury. *Id.* However, Detective Wilson did not testify "about the alleged heroin found in the car of Ms. Rohlf," nor did ADA Meierhans elicit testimony on the topic. *Id.* Detective Wilson also did not testify "about the diagram created by [him] depicting Ms. Rohlf's car merging into Plaintiff's lane, thereby causing the accident," nor did ADA Meierhans elicit testimony from him on the topic. *Id.* Furthermore, ADA Meierhans did not elicit testimony from Officers Taveras, Vazquez, or any representatives of the NYPD lab regarding the heroin recovered from Ms. Rohlf's vehicle. *Id.*

On October 22, 2012, Ms. Rohlf testified before the grand jury. *Id.* Again, ADA Meierhans did not elicit any testimony from Ms. Rohlf about any contraband found in her car. *Id.* Nor did she question her about the "true purpose" for which Ms. Rohlf had picked up her passenger on the night of the accident. *Id.*

On October 23, 2012, ADA Meierhans called Dr. Kanner to testify before the grand jury. *Id.* ADA Meierhans had received Plaintiff's medical records prior to Dr. Kanner testifying, and those records reflected that "Plaintiff had an adequate amount of seizure medication in his blood and [it] did not contain alcohol or controlled substances . . . ." *Id.* The records that Dr. Kanner had provided reflected that he had "advised the Plaintiff to remain seizure free for a period of six months prior to resuming driving, which is contrary to the laws of New York, which require that a driver remain seizure free for one year prior to driving again." *Id.*

At Plaintiff's criminal trial, Dr. Kanner testified that "immediately prior" to his testimony before the grand jury, he asked ADA Meierhans "what the applicable time period was for abstention

of driving after having a seizure." *Id.* In response, ADA Meierhans told him that "the law regarding absence of seizures prior to the resumption of driving was a one year period and that Plaintiff had been so warned of the law by Dr. Kanner prior to the accident." *Id.* ADA Meierhans elicited testimony from Dr. Kanner in front of the grand jury that was consistent with their exchange despite her knowledge "that such testimony . . . which was allowed to stand uncorrected by [ADA Meierhans] . . . was intentionally and maliciously false," and contrary to the information reflected in Plaintiff's medical records. *Id.* This "false testimony" before the grand jury "was allowed in order to obtain probable cause for, and resulted in," Plaintiff's indictment for the crime of manslaughter in the second degree. *Id.* As a result of the indictment, Detective Wilson arrested Plaintiff on November 13, 2012. *Id.*

Plaintiff was defended by counsel in the criminal case against him, "the trial of which [was] published by the media in New York, subjecting . . . Plaintiff to considerable emotional distress, embarrassment and public humiliation." *Id.* ¶ 19. Plaintiff was acquitted of all charges on November 25, 2014. *Id.* Despite his acquittal, as a result of his arrest, a formal reprimand was placed in his personnel file, and he was "subjected to extreme emotional upset, emotional distress and loss of time from employment as a result of the actions of the named Defendants." *Id.*

Plaintiff filed the complaint in this action on November 10, 2015 (Dkt. No. 1), an amended complaint on March 17, 2016 (Dkt. No. 40), and a second amended complaint on May 18, 2016 (Dkt. No. 51). Defendants moved to dismiss the second amended complaint on June 1, 2016 (Dkt. No. 52).

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

5

the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery*, Inc., 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). Legal conclusions, unlike facts, are not entitled to an assumption of truth. *Iqbal*, 556 U.S. at 679. A complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

While courts are to "liberally construe pleadings and briefs submitted by *pro se* litigants . . . reading such submissions to raise the strongest arguments they suggest," *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007), Plaintiff is represented by counsel in this matter. As a result, the Court addresses only those claims which are clearly pleaded in the second amended complaint.

### III. DISCUSSION

The Second Amended Complaint asserts a variety of claims under federal and state law. The Court considers each of Plaintiff's claims below.

#### A. Malicious Prosecution

##### 1. Claim Against ADA Meierhans

The complaint asserts a claim of malicious prosecution under 42 U.S.C. § 1983 against ADA Meierhans on the grounds that she "unlawfully and knowingly suborn[ed] false testimonial [sic] against the Plaintiff . . . resulting in the filing of an indictment and prosecution of Plaintiff," Compl. ¶ 21, and that she "unlawfully with[eld] the presentation of exculpatory evidence" from the grand jury, *id.* ¶ 24. Because ADA Meierhans is entitled to absolute immunity with respect to this claim, it must be dismissed.

ADA Meierhans argues that she is entitled to absolute immunity with respect to Plaintiff's malicious prosecution claim, because the "entirety of plaintiff's allegations against [her] address[] her

6

conduct before the Grand Jury in this case, and the decisions made by her in her preparation therefor." Defendants' Memorandum of Law in Support of Motion to Dismiss, Dkt. No. 53 ("Def. Mem."), at 6. In opposition, Plaintiff argues that he "has pled that the accident he was involved in occurred in July 2012 and that Defendants undertook a rather lengthy investigation into the cause of the accident, which Plaintiff contends is a factor indicating that Defendant Meierhans was acting in an investigatory capacity," because "during this investigatory phase Defendant Meierhans was acquiring evidence such as Plaintiff's medical records, police reports including witnesses' statements, diagrams of the accident scene and obtaining search warrants for Plaintiff's blood." Memorandum in Opposition [to] Motion to Dismiss, Dkt. No. 56 ("Pl. Mem."), at 3. Plaintiff also contends that "Defendant Meierhans' acquiring this evidence indicates that she was acting in an investigatory capacity at that time, in an attempt to solve or determine that cause of the accident and whether there are [sic] any criminal liability, as opposed to an advocative function . . . ." *Id.* However, as noted above, the complaint clearly asserts that the only bases for Plaintiff's malicious prosecution claim against ADA Meierhans are her alleged subornation of perjury before, and withholding of exculpatory evidence from, the grand jury. Only those specific allegations were briefed by Defendants, and the Court will limit its opinion to those pleaded claims as well.

"Absolute immunity bars a civil suit against a prosecutor for conduct that is 'intimately associated with the judicial phase of the criminal process.'" *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). "This immunity attaches to conduct in court, as well as conduct 'preliminary to the initiation of a prosecution and actions apart from the courtroom.'" *Id.* (quoting *Imbler*, 424 U.S. at 431 n.33).

"To determine whether an official enjoys absolute immunity," courts are to "take a 'functional approach,' examining 'the nature of the function performed, not the identity of the actor who performed it.'" *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). "Prosecutorial immunity from § 1983 liability is broadly

defined, covering virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Giraldo*, 694 F.3d at 165 (quoting *Hill v. City of New York*, 45 F.3d 653, 660 (2d Cir. 1995) (internal quotation marks omitted)). "These functions include deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas." *Simon*, 727 F.3d at 171 (citing *Imbler*, 424 U.S. at 431 n.33). More specifically, the "Supreme Court has explained that a prosecutor's functions preliminary to the initiation of proceedings include 'whether to present a case to a grand jury, whether to file an information, whether and when to prosecute, whether to dismiss an indictment against particular defendants, which witnesses to call, and what other evidence to present.'" *Giraldo*, 694 F.3d at 166 (quoting *Imbler*, 424 U.S. at 431 n.33).

The "relevant question . . . is whether a reasonable prosecutor would view the acts challenged by the complaint as reasonably within the functions of a prosecutor." *Id.* "[T]he 'functional' test for absolute immunity is an objective one; it does not depend upon the state actor's subjective intent." *Hill*, 45 F.3d at 662. As a result, if the challenged acts are "reasonably within the functions of a prosecutor," then "absolute immunity applies to protect the prosecutor even if the fact of a complaint's allegations of malicious or corrupt intent behind the acts." *Giraldo*, 694 F.3d at 166.

On the other hand, a "prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Buckley*, 509 U.S. at 273. "Although all investigative activity could be considered in some sense to be 'prepar[ation] for the initiation of judicial proceedings,' the Supreme Court has sought to draw a line between those preparatory steps that a prosecutor takes to be an effective advocate of a case already assembled and those investigative steps taken to gather evidence." *Smith v. Garretto*, 147 F.3d 91, 94 (2d Cir. 1998)

8

(quoting *Buckley*, 509 U.S. at 273). "[A]ctions taken as an investigator enjoy only qualified immunity." *Zahrey v. Coffey*, 221 F.3d 342, 346 (2d Cir. 2000). "The investigative acts that are entitled to only qualified immunity are those undertaken in the phase of law enforcement that involves the gathering and piecing together of evidence for indications of criminal activities and determination of the perpetrators." *Giraldo*, 694 F.3d at 166.

Plaintiff's malicious prosecution claim against ADA Meierhans, as pleaded in the complaint, is based upon her alleged subornation of perjury before, and withholding of exculpatory evidence from, the grand jury. Compl. ¶¶ 21, 24. That claim is clearly foreclosed, however, by established Second Circuit precedent. In *Peay v. Ajello*, 470 F.3d 65 (2d Cir. 2006), the plaintiff alleged that the state prosecutor had fabricated evidence at trial, withheld exculpatory evidence, and suborned perjury. *Id.* at 67. The district court dismissed his complaint against the prosecutor under § 1983 on the basis that the prosecutor enjoyed absolute immunity, and the Second Circuit affirmed, concluding: "Plaintiff's claims against [the prosecutor] which encompass activities involving the initiation and pursuit of prosecution, are foreclosed by absolute prosecutorial immunity, regardless of their alleged illegality." *Id.* at 68 (quoting *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) ("A prosecutor is . . . entitled to absolute immunity despite allegations of his knowing use of perjured testimony and the deliberate withholding of exculpatory information. Although such conduct would be reprehensible, it does not make the prosecutor amenable to a civil suit for damages.") (citation and internal quotation marks omitted). Because ADA Meierhans is immune from liability with respect to Plaintiff's malicious prosecution claim as pleaded, that claim is dismissed.

### 2. Claim Against Detective Wilson

The complaint also asserts a claim for malicious prosecution against Detective Wilson on the ground that Detective Wilson "unlawfully . . . prosecut[ed] the Plaintiff based upon an indictment which was obtained by and with[] knowingly false testimony . . . ." Compl. ¶ 27. Because Detective

Wilson is, like ADA Meierhans, entitled to immunity with respect to this claim, it must also be dismissed.

Detective Wilson argues that this claim must be dismissed because he "is absolutely immune from suit in this case based upon his testifying before the Grand Jury following his investigation" given that Plaintiff's claim "arises solely from [Detective Wilson's] testimony before the Grand Jury in this case." Def. Mem. at 7, 8 (citing *Rehberg v. Paul*, 132 S. Ct. 1497 (2012)). Plaintiff opposes Detective Wilson's motion to dismiss his malicious prosecution claim, maintaining that "Plaintiff has pled suppression of evidence by Detective Wilson prior to his testimony in the grand jury . . . bad faith in his failure to re-interview the other driver after seventeen bags of heroin and two syringes with liquid were found in her car shortly after the accident . . . and conduct undertaken in bad faith, namely the procuring of a warrant by Defendant's [sic] Meierhans and Wilson for Plaintiff's blood only, even though the contraband in the other vehicle had been found prior to the application for the warrant for Plaintiff's blood . . . ." Pl. Mem. at 5. Similarly to Plaintiff's malicious prosecution claim against ADA Meierhans, however, the grounds asserted in Plaintiff's opposition are broader than those asserted in the complaint; the complaint makes clear that the basis for Plaintiff's malicious prosecution claim against Detective Wilson is Detective Wilson's involvement in a prosecution based upon an indictment obtained because of false testimony, and that is the claim that the Court will address.

"To sustain a § 1983 claim of malicious prosecution, a plaintiff must demonstrate conduct by the defendant that is tortious under state law and that results in a constitutionally cognizable deprivation of liberty." *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003). "To state a claim under New York law for the tort of malicious prosecution, a plaintiff must show: (1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." *Id.*

The "absence of probable cause is an essential element of a claim for malicious prosecution." *McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir. 2006); *accord Manganiello v. City of New York*, 612 F.3d 149, 161-62 (2d Cir. 2010) ("[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York.") (citation omitted). "Where, as here, a grand jury indicted the plaintiff on the relevant criminal charge, New York law creates a presumption of probable cause that can only be overcome by evidence that the indictment 'was the product of fraud, perjury, the suppression of evidence by the police, or other police conduct undertaken in bad faith.'" *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015) (quoting *Green v. Montgomery*, 219 F.3d 52, 60 (2d Cir. 2000)).

"In *Rehberg v. Paulk* . . . the Supreme Court announced the bright line rule that a grand jury witness, including a law enforcement officer, 'has absolute immunity from any § 1983 claim based on the witness' testimony,' even if that testimony is perjurious." *Coggins v. Buonora*, 776 F.3d 108, 112 (2d Cir. 2015) (quoting *Rehberg v. Paulk*, 132 S. Ct. 1497, 1506 (2012)). "The *Rehberg* Court thereby expressly extended to grand jury witnesses, including police officers, the same immunity that had previously been enjoyed by witnesses at trial." *Id.*

To the extent that Plaintiff's malicious prosecution claim against Detective Wilson is based upon Detective Wilson's grand jury testimony, it must be dismissed as clearly violative of the rule stated in *Rehberg*. And to the extent that Plaintiff seeks to hold Detective Wilson liable based upon his conduct in investigating the accident, separate and apart from his grand jury testimony, based upon the facts pleaded in the complaint, that claim must also be dismissed. Plaintiff has pleaded that Detective Wilson failed to adequately investigate leads pointing to potentially exculpatory evidence, including the drugs and drug paraphernalia found in Ms. Rohlf's car. But that alleged deficiency in Detective Wilson's investigation does not constitute the suppression of evidence within the meaning of case law addressing the presumption of probable cause that attaches to a grand jury

indictment, and Plaintiff has not pleaded that Detective Wilson otherwise acted in bad faith. Plaintiff's malicious prosecution claim against Detective Wilson is dismissed.

### B. Due Process Claim

The complaint asserts a claim for "due process violations" under § 1983 against ADA Meierhans on the ground that she "knowingly ignor[ed] evidence in the custody of" the NYPD and Detective Wilson, which resulted in Plaintiff "being charged with the commission of a criminal offenses without basis in law or fact." Compl. ¶ 28. This claim must be dismissed insofar as it challenges ADA Meierhans' presentation of the case to the grand jury, which is a function for which ADA Meierhans is entitled to absolute immunity. *Simon*, 727 F.3d at 171. Plaintiff's claim against ADA Meierhans for due process violations is dismissed.

### C. False Arrest

Plaintiff has brought a false arrest claim against Detective Wilson, alleging that Detective Wilson "unlawfully arrest[ed] . . . Plaintiff based upon an indictment which was obtained by and with, knowingly false testimony, resulting in . . . harm to Plaintiff." Compl. ¶ 27. This claim must be dismissed, because it challenges a period of detention subsequent to the issuance of the grand jury indictment, a period which cannot, as a matter of law, constitute false arrest.

Detective Wilson argues that Plaintiff's false arrest claim is not viable because Plaintiff's "arrest occurred after legal process had issued, namely the Grand Jury indictment" and that as a result, "Plaintiff's claim . . . lies in malicious prosecution." Def. Mem. at 11. As the Supreme Court has explained, "false imprisonment consists of detention without legal process" and as a result, "a false imprisonment ends once the victim becomes held *pursuant to such process*." *Wallace v. Kato*, 549 U.S. 384, 389 (2007). "Thereafter, unlawful detention forms part of the damages for the entirely distinct tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process," and "[i]f there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment . . . ."

12

*Id.* at 390; *accord Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995) ("Typically, a warrantless deprivation of liberty from the moment of arrest to the time of arraignment will find its analog in the tort of false arrest . . . while the tort of malicious prosecution will implicate post-arraignment deprivations of liberty.").

Because Plaintiff alleges that he was detained by Detective Wilson only after the grand jury issued the indictment—and was therefore only detained *pursuant to legal process*—the facts alleged in the complaint cannot form the basis for a claim of false arrest. Plaintiff's claim for false arrest against Detective Wilson is dismissed. Moreover, because the "problem with [Plaintiff's] cause[] of action" for false arrest is "substantive," "better pleading will not cure it" and "[r]epleading would thus be futile." *Cuoco v. Mortisugu*, 222 F.3d 99, 112 (2d Cir. 2000). Accordingly, the Court denies Plaintiff leave to amend with respect to his claim for false arrest, and this claim is dismissed with prejudice.

### D. Claims Against the City of New York

Plaintiff also asserts various claims against the City of New York, based upon the allegedly unlawful actions of ADA Meierhans and Detective Wilson.

#### 1. Negligent Hiring/Training/Supervision

Plaintiff alleges that the City of New York is liable under state law for "negligently hiring, training, screening, supervising and/or instructing" Detective Wilson and ADA Meierhans. Compl. ¶¶ 33, 35. "To maintain a claim against a municipal employer for the 'negligent hiring, training, and retention' of a tortfeasor under New York law, a plaintiff must show that the employee acted 'outside the scope of her employment.'" *Velez v. City of New York*, 730 F.3d 128, 136-37 (2d Cir. 2013) (quoting *Gurevich v. City of New York*, No. 06-cv-1646 (GEL), 2008 WL 113775, at *6 (S.D.N.Y. Jan. 10, 2008)). "If the employee acted within the scope of her employment, the employer and the employee's supervisors may be held liable for the employee's negligence only under a theory of *respondeat superior*." *Id.*

Plaintiff's claim against the City for negligent hiring, training, screening, supervising and/or instructing Detective Wilson and ADA Meierhans must fail for the simple reason that he has not alleged a necessary element of such a claim—that either Defendant acted outside the scope of his or her employment. Plaintiff's claim for negligent hiring, training, screening, supervision, and instruction against the City is dismissed.

### 2. Intentional Infliction of Emotional Distress

Plaintiff also alleges that the City is liable for "negligently hiring, training, screening supervising and/or instructing" ADA Meierhans on the basis that such negligence "resulted in the intentional infliction of emotional distress upon the Plaintiff." Compl. ¶ 37.[1] Similarly, Plaintiff alleges that the City is liable "through the doctrine of Respondeat Superior" for the actions of ADA Meierhans which "resulted in the intentional infliction of emotional distress upon Plaintiff." *Id.* ¶ 39. Finally, although no such claim has been pleaded with respect to any conduct Detective Wilson in the complaint, Plaintiff's opposition states that "flippant comments made by law enforcement after duping the Plaintiff into signing yet another consent form for his medical records" constitutes conduct that has "a substantial probability of causing severe emotional distress." Pl. Opp. at 6. Plaintiff's intentional infliction claim must be dismissed for failure to plead that the Defendants engaged in sufficiently extreme and outrageous conduct.

Damages for intentional infliction of emotional distress are available under New York law where a defendant engages in "extreme and outrageous conduct, which so transcends the bounds of decency so as to be regarded as atrocious and intolerable in a civilized society." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 157 (2d Cir. 2014) (quoting *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 143 (1985) (quotation marks omitted)). "To prevail on such a claim, a plaintiff must establish that

---

[1] The Court takes no position on whether a municipality may be liable for intentional infliction of emotional distress on the basis of its own negligence. This question need not be addressed here, because the Court is assessing whether the conduct of ADA Meierhans and Detective Wilson themselves, as employees of the City whose liability could be attributed to the City pursuant to the doctrine of respondeat superior, could form the basis of the intentional infliction claims that Plaintiff has pleaded.

14

there was 'extreme and outrageous conduct,' that the conduct was undertaken with 'intent to cause, or disregard of a substantial probability of causing, severe emotional distress,' and that the conduct did in fact cause severe emotional distress." *Id.* at 157-58 (quoting *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993)); *see also Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) ("Under New York law, a claim for intentional infliction of emotional distress requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress.").

"Whether the conduct alleged may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance." *Stuto*, 164 F.3d at 827. Moreover, intentional infliction of emotional distress is a "highly disfavored [tort] under New York law," *Turley*, 774 F.3d at 158 (quoting *Nevin v. Citibank, N.A.*, 107 F. Supp. 2d 333, 345-45 (S.D.N.Y. 2000)), and it "is to be invoked only as a last resort." *Id.* (quoting *McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 256 A.D.2d 269, 270 (1st Dep't 1998)).

Here, the Court agrees with the City that "[n]one of the allegations in the complaint remotely approach satisfying" the requisite "standard of extreme or outrageous conduct." Def. Mem. at 13. With respect to the conduct of ADA Meierhans, Plaintiff has not identified any of her acts that were "extreme and outrageous" within the meaning of governing case law, and the Court is unprepared to accept the sweeping proposition, implied in the complaint, that ADA Meierhans' pursuit of an ultimately unsuccessful prosecution, which received substantial press coverage, constitutes such conduct by itself. Were the Court to accept that position, every criminal defendant would have a viable claim for intentional infliction of emotional distress.

Moreover, to the extent Plaintiff would point to ADA Meierhans' alleged subornation of perjury or alleged withholding of exculpatory evidence from the grand jury, more specifically, that conduct does not provide a sufficient basis for this claim either, because "under New York law, an

15

intentional infliction tort may 'be invoked only as a last resort . . . to provide relief in those circumstances where traditional theories of recovery do not.'" *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (internal citations omitted). This conduct more appropriately forms the basis of a malicious prosecution claim, albeit one for which ADA Meierhans is entitled to immunity. *See Salmon*, 802 F.3d at 257 ("[B]ecause other tort remedies were available [plaintiff,] the district court correctly dismissed his intentional infliction claim."); *Thomas v. Cnty. of Putnam*, 262 F. Supp. 2d 241, 251 (S.D.N.Y. 2003) ("[S]ince the conduct complained of is encompassed in plaintiff's claim[] for malicious prosecution . . . plaintiff's claim for intentional infliction of emotional distress must be dismissed."); *see also Elleby v. City of New York*, No. 15-cv-109 (WHP), 2016 WL 4367962, at *4 (S.D.N.Y. Aug. 11, 2016) ("Because the allegations undergirding this claim [for intentional infliction of emotional distress] are the same as those supporting [plaintiff's] false arrest and Fourth Amendment claims, his claim for intentional infliction of emotional distress must be dismissed.").

As for Detective Wilson's comment that Plaintiff had "better get a lawyer," a claim based upon this remark fares no better. As New York courts have made clear, the conduct complained of "must consist of more than mere insults, indignities and annoyances" and a claim "is dismissible unless the claim arises as a result of a 'campaign of harassment or intimidation.'" *164 Mulberry St. Corp. v. Columbia Univ.*, 4 A.D.3d 49, 56 (1st Dep't 2004) (quoting *Nader v. Gen. Motors Corp.*, 307 N.Y.S.2d 647, 654 (1970)); *accord Margrabe v. Sexter & Warmflash, P.C.*, 353 F. App'x 547, 550 (2d Cir. 2009). Detective Wilson's stray remark that Plaintiff had "better get a lawyer" cannot, as a matter of law, constitute conduct which may form the basis of a cognizable claim for intentional infliction of emotional distress, and this claim must fail.

Plaintiff's claim for intentional infliction of emotional distress against the City is dismissed. Furthermore, because Plaintiff is also pursuing claims for malicious prosecution against ADA Meierhans and Detective Wilson, liability for intentional infliction of emotional distress based upon their conduct is foreclosed as a matter of law, and leave to amend with respect to Plaintiff's

intentional infliction claim is denied. Plaintiff's intentional infliction of emotional distress claim is therefore dismissed with prejudice.

### 3. Respondeat Superior Liability

Finally, the complaint asserts that the City is liable "through the doctrine of Respondeat Superior" for the actions of Detective Wilson "which resulted in the false arrest, detention, photographs and searches of Plaintiff, public humiliation and embarrassment, emotional distress and the incurrence of monetary damages." Compl. ¶ 39. Relatedly, the complaint asserts that the City is liable "through the doctrine of Respondeat Superior" because the actions of ADA Meierhans and Detective Wilson "resulted in the intentional infliction of emotional distress upon Plaintiff . . . ." *Id.* ¶ 41. Any attempt to hold the City liable for the actions of Detective Wilson fails, however, because Plaintiff has not pleaded an underlying tort against Detective Wilson for which the City could be held vicariously liable.

"[I]n contrast to claims brought under 42 U.S.C. § 1983, respondeat superior liability does apply to claims brought under New York state law." *Aponte v. City of New York*, No. 14-cv-3978 (KMK), 2016 WL 5394854, at *7 (S.D.N.Y. Sept. 26, 2016) (collecting cases). Under that doctrine, an employer can be held "vicariously liable for torts committed by an employee acting within the scope of employment . . . so long as the tortious conduct is generally foreseeable and a natural incident of the employment." *RJC Realty Holding Corp. v. Republic Franklin Ins. Co.*, 777 N.Y.S.2d 4, 6-7 (2004) (citation and internal quotation marks omitted). Plaintiff's claim for respondeat superior liability against the City must be dismissed, however, inasmuch as all claims against Detective Wilson are being dismissed, and there is as a result no underlying tort upon which to base such vicarious liability. *See, e.g., Toomer v. Cellco P'ship*, No. 11-cv-7515 (PAE), 2012 WL 2953831, at *10 (S.D.N.Y. July 20, 2012) ("[T]o state a claim for respondeat superior against [the employer]" the plaintiff "must plead an underlying tort against [the employee]."); *Wende C. v. United Methodist Church*, 6 A.D.3d 1047, 1052 (4th Dep't 2004) ("In the absence of any wrongful or actionable underlying conduct by

17

defendant T., there can be no imposition of vicarious liability against any alleged employer or principal of defendant T. pursuant to the doctrine of respondeat superior.").

### E. Leave to Amend

Plaintiff has already amended his complaint twice. Nevertheless, in this circuit, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). The Court recognizes that Plaintiff's opposition to Defendants' motion raises claims that are not pleaded in the second amended complaint, and the Court cannot as a result conclude that a further amendment on the basis of those additional asserted grounds for relief would be futile. Accordingly, the Court grants Plaintiff leave to amend the complaint to address the deficiencies identified in this opinion, with the exception of Plaintiff's false arrest and intentional infliction of emotional distress claims, which are being dismissed with prejudice. Any amended complaint must be filed no later than 30 days from the date of this order.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss the second amended complaint is GRANTED. The Clerk of Court is directed to terminate the motion pending at Dkt. No. 52.

SO ORDERED.

Dated: February 3, 2017
New York, New York

_____
GREGORY H. WOODS
United States District Judge